UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES D. SMITH,

    Plaintiff,

  v.

BRIAN MCGARVIE, *et al.*,

    Defendants.

Case No. C05-5156RJB

REPORT AND RECOMMENDATION

Noted for June 8, 2007

    This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1), Local Magistrates Rules MJR 3 and 4, and Rule 72 of the Federal Rules of Civil Procedure. The case is before the court on defendants' motions for summary judgment, which was noted for consideration on October 13, 2006. *See* Docs. 85 & 101. Plaintiff filed several motions and pleadings in response to the dispositive motions, including his responses (Docs. 95 & 107), which included a cross-motion for summary judgment (Doc. 107).

    After reviewing the motions, plaintiff's pleadings, and the balance of the record, the undersigned recommends that the Court grant summary judgment in favor of defendants.

## PROCEDURAL AND FACTUAL BACKGROUND

    The Complaint in the matter was filed on or about February 28, 2007. Plaintiff, James D. Smith, is a Washington State inmate, and at all relevant times, Mr. Smith was in custody at the Clallam Bay Corrections Center ("CBCC"). The Complaint names four defendants: T. Heckathorn, a Unit Counselor

1  at CBCC; Brian McGarvie, a C.U.S. officer at CBCC; Helen Schuler, a Counselor at CBCC; and Allen
2  Hayter, a Physician's Assistant at CBCC.  Plaintiff alleges defendants wrongfully discriminated and
3  retaliated against him, in addition to denying him proper medical care after he injured his shoulder on or
4  about October 10, 2004.  On January 9, 2006, Plaintiff filed an Amended Complaint (Doc. 69), naming
5  only two defendants (Brian McGarvie and Kerri McTarsney) alleging the following three claims: (1) First
6  Amendment Retaliation & Harrassment; (2) Conspiracy; and (3) Denied Access to the Court.

7  Excluding Plaintiff's denial of medical care claim, Defendants move to dismiss plaintiff's other
8  claims due to Mr. Smith's failure to exhaust available administrative remedies as required by 42 U.S.C. §
9  1997(e)(a).  Defendants argue Plaintiff's has failed to show any deliberate indifference to support his claim
10 of inadequate medical care.  The court should grant Defendants' motion.

## DISCUSSION

A § 1983 complaint is frivolous when it has no arguable basis in law or fact.  <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1228 (9th Cir. 1984).  When a complaint is frivolous, fails to state a claim, or contains a complete defense to the action on its face, the court may dismiss an *in forma pauperis* complaint before service of process under 28 U.S.C. § 1915(d).  <u>Noll v. Carlson</u>, 809 F.2d 1446, 575 (9th Cir. 1987) (*citing* <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1228 (9th Cir. 1984)).  A plaintiff must allege a deprivation of a federally protected right in order to set forth a *prima facie* case under 42 U.S.C. §1983.  <u>Baker v. McCollan</u>, 443 U.S. 137, 140 (1979).  In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States.  <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), *overruled on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present.  <u>Haygood v. Younger</u>, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

### A. EXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES IS REQUIRED

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court.  The relevant portion of the Act states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Inmates must exhaust prison grievance remedies before filing suit if the grievance system is capable of providing any relief or taking any action in response to the grievance.  Booth v. Churner, 531 U.S. 956, 121 S.Ct. 1819, 1825 (2001).  The Supreme Court has consistently and recently reaffirmed the exhaustion requirement.  Jones v. Bock, 549 U.S. ___, 127 S.Ct. 910 (2007); Woodford v. Ngo. 548 U.S. ___, 126 S.Ct. 2378 (2006).  In Woodford, the Court upheld the requirement that the inmates fully exhaust available administrative remedies, and held that exhaustion must be done in a timely manner, consistent with prison policies. Woodford. at 2383-84.

Here, except for the claim that Mr. Smith was wrongfully denied a magnetic resonance imaging ("MRI") test on his shoulder, Plaintiff failed to exhaust available administrative remedies.

Washington State's Department of Correction's grievance procedure consists of four levels of review:

> **Level 0:**  The grievance coordinator at the prison receives a written complaint from an offender on an issue about which the offender wishes to pursue a formal grievance. At this complaint level, the prison's grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance. Routine and emergency complaints accepted as formal grievances begin at Level I, complaints alleging staff misconduct are initiated at Level II.
>
> **Level I:**  Grievances against policy, procedure, or other offenders, and grievances processed as emergencies. The local grievance coordinator is the respondent at this level.
>
> **Level II:**  Offenders may appeal Level I grievances.  Staff conduct grievances are initiated at this level. All appeals and initial grievances received at Level II are investigated, with the prison superintendent being the respondent.
>
> **Level III:**  Offenders may appeal all Level II responses except emergency grievances to Department headquarters in Tumwater, Washington, where they are reinvestigated.  State Administrators are the respondents to Level III appeals.

Generally, inmates have 20 working days from the date of an incident to properly file and initiate the grievance process.

Here, Defendants provide persuasive evidence that Mr. Smith failed to properly exhaust any administrative grievances, except for the claims related to grievance number 0425922.  During the relevant time period, Plaintiff filed several grievances, but only one grievance (No. 0425922) was exhausted or taken through the complete grievance process.

Erroneously, Plaintiff argues he does not have to complete the administrative grievance process on

REPORT AND RECOMMENDATION
Page - 3

claims that seek monetary damages, citing overturned case law (Tierney v. Kupers, 128 F.3d 1310, 1311 (9th Cir. 1997). Plaintiff correctly points out that there was a time period when some Appellate Courts distinguished "available" administrative remedies between monetary relief and injunctive types of actions. However, as noted above, in Booth v. Churner, 531 U.S. 956, 121 S.Ct. 1819, 1825 (2001) the Supreme Court discussed this precise issue. Discussing the intent of the administrative exhaustion requirement, the Court wrote: "Congress's imposition of an obviously broader exhaustion requirement makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms. Thus, we think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Id. at 1825.

In sum, Defendants have provided sufficient evidence to establish Plaintiff has not properly exhausted any claims, other than his Eighth Amendment claim of inadequate medical care. Plaintiff has not shown or established any question of material fact nor shown any persuasive precedent to prevent the court from granting summary judgment in favor of Defendants. Accordingly, the undersigned finds that Plaintiff has not exhausted available administrative remedies. The PLRA requires prisoners to participate in available grievance procedures prior to filing a complaint in federal court. Defendants' motion for summary judgment on the basis the Plaintiff failed to properly exhaust his Eighth Amendment claim should be granted.

### B. PLAINTIFF HAS FAILED TO SHOW ANY DELIBERATE INDIFFERENCE

Officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of convicted prisoners. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state such a claim, a prisoner must show that the official knew of and disregarded a substantial risk of serious harm to his health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Allegations of medical malpractice and gross negligence are insufficient to establish deliberate indifference. Estelle, 429 U.S. at 106; Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

The undisputed facts related to Mr. Smith's medical care do not support plaintiff's claim of deliberate indifference. The issue with Plaintiff's shoulder began on or about October 10, 2004, when he was involved in an altercation at Airway Heights Correction Center. The following day he was seen by medical staff, requesting ibuprofen for shoulder pain.

Because of the altercation, Plaintiff was transferred out of the Airway Heights facility and initially taken to the Washington State Penitentiary (WSP), where he was examined. Medical personnel at the Penitentiary noted no swelling or redness in the shoulder area. Plaintiff was subsequently transferred to CBCC via the Washington Corrections Center in Shelton, Washington. While at Shelton facility Plaintiff was again examined by medical staff who believed there may be a shoulder sprain or rotator cuff strain based upon Plaintiff's complaints. Plaintiff had his shoulder x-rayed at WCC which revealed no fracture.

On November 3, 2004, Plaintiff arrived at CBCC, and the following day he was seen by the medical professionals who recommended a cortisone trigger point shot. John Joseph, Advanced Registered Nurse Practitioner (ARNP), administered the shot that day. Physician's assistant Allen Hayter saw Plaintiff on November 12, 2004, and he noted that Mr. Smith repeatedly asked about a transfer back to the Washington State Reformatory (WSR). Plaintiff is quoted as saying "I liked it there, they took good care of me. You guys will never be able to take care of me." Mr. Hayter refereed Plaintiff to be seen by Dr. Hopfner.

Dr. Hopfner examined plaintiff, and on December 8, 2004, pursuant to Dr. Hopfner's request, further x-rays were taken of Plaintiff's shoulder and no evidence of a separation was found. Also on that day, the Department of Correction's Care Review Committee (CRC) considered Dr. Hopfner's request for an MRI on Plaintiff's shoulder. The CRC is made up of a panel of medical professionals who determine if requested procedures appear medically necessary or not. In this case, the CRC, on this date, decided to defer a decision on whether to proceed with an MRI. Defendant Sharon Morgan, who is not a licensed medical provider, is present at the CRC meetings but does not vote on what procedures are medically indicated. She informed Mr. Smith of the CRC's decision.

On December 11, 2004, Plaintiff was seen by Mr. Hayter, and Plaintiff again demanded to be transferred "because you people aren't capable of handling my problems." Mr. Hayter noted that Plaintiff was "extremely noncompliant and uncooperative in anything we do for him." On February 11, 2005,

REPORT AND RECOMMENDATION
Page - 5

1  Plaintiff demanded certain medications even though Mr. Hayter did not feel they were medically indicated.
2  As a result "He (Plaintiff) does state he will see me in court since I won't give him what he asks for."
3        On April 5, 2005, Plaintiff went to Mr. Hayter requesting a transfer and seeking physical therapy.
4  Mr. Hayter referred Plaintiff to Dr. Hopfner who presented the requests to the CRC. On April 20, 2005,
5  the CRC approved Plaintiff for an evaluation for physical therapy. Plaintiff was then transported to the
6  Fork Community Hospital for an evaluation and given "exercise that can be done at CBCC."
7        On April 25, 2005, Plaintiff was examined by Nurse Joseph for blood pressure issues.  Mr. Joseph
8  noted "that this man in the past has been complaining that he can't use his right arm. He would walk
9  around with his right arm hanging down as if it were limp and unusable. He had no trouble getting his coat
10 on today, and no trouble getting on and off the table. I notice no abnormality, and no favoring of any kind
11 to the right upper extremity."  Similarly, on June 3, 2005, Dr. Hopfner sees Plaintiff and states "I note he is
12 not dragging his left (sic) arm, or leaving it limp, as he was before...."
13       Plaintiff's request for an MRI was again referred to and considered by the CRC.  On August 3,
14 2005, the committee found the procedure to not be medically necessary as "Patient was noncompliant with
15 PT and further evaluation was not possible. Exam, limited due to compliance, shows no atrophy or other
16 anomaly. X-rays at the time of injury were within normal limits. He has been observed using his arm. There
17 is very little objective evidence to support further evaluation."   The court notes the CRC approved
18 Plaintiff for a colonoscopy the same day.
19       In response to the motion and facts presented above, Plaintiff does not raise any genuine issues of
20 material fact to avoid summary judgment being granted in favor of defendants.  For instance, Plaintiff
21 argues, "Plaintiff disputes their contentions and alleges that such policy is unlawful and deprives him of the
22 proper care to prevent permanent disability of his right shoulder that he is in constant pain and has limited
23 use of, and his conditions was worsened due to this delay, of defendant's failure to act on the
24 recommendation so the prison doctor Hopfner and the physical therapist who was recommended by the
25 defendants."  Plaintiff fails to show any actions or omissions to act of the named defendants that would
26 support a claim of deliberate indifference.  The facts show that the medical staff at four different prisons
27 examined his shoulder and treated it appropriately.  At most Mr. Smith has shown that Dr. Hopfner would
28 have liked to have obtained an MRI report, but other equally qualified medical professionals disagreed with

1 Dr. Hopfner's request for the MRI.   This difference of opinion could not amount to an Eighth Amendment
2 violation.

## CONCLUSION

Based on the foregoing discussion, the Court should grant Defendants' motion for summary judgment and dismiss plaintiff's complaint and causes of action.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **June 8, 2007**, as noted in the caption.

DATED this 15th day of May, 2007.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge